UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff(s), | ) |
| vs. | ) Case No. 4:21-CR-532 SEP (SRW) |
| CHRISTOPHER LEE CARROLL, et al., | ) |
| Defendant(s). | ) |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the Court on Defendant Christopher Lee Carroll's Motion for Disclosure of Certain Testimony and Legal Instructions Provided to the Grand Jury (ECF No. 36). All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

**I.   BACKGROUND**

On September 29, 2021, a grand jury returned a nine-count indictment charging Defendants Christopher Lee Carroll and George Reed with three counts of bank fraud in violation of 18 U.S.C. § 1344 & 2, and six counts of money laundering in violation of 18 U.S.C. § 1957 & 2. ECF No. 2. The indictment alleges Defendants obtained funds from the Paycheck Protection Program through material misrepresentations that they would use those funds to compensate their employees when they instead used the funds to start three new companies, to purchase vehicles and land, and to pay themselves.

On October 12, 2021, Defendant Carroll filed his request for discovery which included a request for grand jury transcripts and the instructions given to the grand jury. In response, the Government filed its Motion for Order Regarding Government Responses to Discovery Request

1

of Defendant Christopher Lee Carroll. ECF No. 29. In its Motion, the Government proposed a course of action for the parties to take regarding discovery and asked the Court to find the Government is not required to provide any response to Defendant Carroll's request for grand jury materials. Defendant Carroll then filed the instant motion asking for the disclosure of testimony and instructions for the following seven categories:

(1) Defendants' bank and/or financial records;

(2) the traceability, fungibility, or segregation of PPP loan funds, including but not limited to regarding Paragraphs 48-49, 66, 82, and 84 of the Indictment;

(3) the availability of other of Defendants' funds to pay for the purchases alleged in Paragraphs 52-64 or to pay the draws alleged in Paragraphs 79-82;

(4) the ownership of any company with which Defendants are alleged to be affiliated;

(5) PPP rules and regulations, including but not limited to regarding Paragraphs 8, 31, 34, 36, 44, 45, 47, 50, and 68;

(6) paragraphs 2, 6, 8, 31-34, 36, 44, 45, 47-50, 52-64, 66, 68, 82, and 84;

(7) the aiding and abetting charge.

## II.  DISCUSSION

The Supreme Court has long recognized "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) provides the Court "may authorize the disclosure . . . of a grand-jury matter at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." In order for the Court to allow such a disclosure, the defendant must establish a "particularized need" for the information. *United States v. Broyles*, 37 F.3d 1314, 1318 (8th Cir. 1994) (citing *United States v. Proctor & Gamble*, 356 U.S. 677, 683 (1958)). "A long line of

2

cases in this Circuit note that 'a bare allegation that the records [of a grand jury] are necessary to determine if there may be a defect in the grand jury process does not satisfy the 'particularized need' requirement.'" *Id*. (quoting *United States v. Warren*, 16 F.3d 247, 283 (8th Cir. 1994)). To demonstrate a particularized need, a party must show the disclosure is "(1) required to avoid possible injustice in a different judicial proceeding, (2) greater than the need for continued secrecy, and (3) specifically directed at the material required." *United States v. McDougal*, 559 F.3d 837, 840-41 (8th Cir. 2009) (citing *In re Grand Jury Proceedings Relative to Perl*, 838 F.2d 304, 306 (8th Cir. 1988)).

Witness transcripts, which Defendant Carroll seeks here, are entitled to the greatest protection under Rule 6(e). *In re Grand Jury Investigation*, 55 F.3d 350, 354 (8th Cir. 1995). Additionally, because the grand jury has not finished its investigation, despite the issuing of the indictments against Defendants, secrecy of the proceedings remains necessary. *Perl*, 838 F.2d at 307 ("[T]he interests in grand jury secrecy are reduced, although not eliminated, when the grand jury has ended its investigation."). The need for secrecy in this case also is heightened because current employees of Defendants may have testified before the grand jury and may face consequences from Defendants should their testimony be disclosed. *See Douglas Oil*, 441 U.S. at 222 ("Concern as to the future consequences of frank and full testimony is heightened where the witness is an employee of a company under investigation.").

"The requisite showing of particularized need varies with the circumstances of each case." *In re Grand Jury Investigation Relative to Perl*, 838 F.2d at 306. Because Defendant Carroll seeks grand jury material to challenge the indictment, he must establish that he may have grounds to dismiss the indictment because of a matter which occurred before the grand jury to demonstrate a particularized need for the materials. Fed. R. Crim. P. 6(e)(3)(E)(ii). Grand jury

3

proceedings are "afforded a strong presumption of regularity, and a defendant seeking to overcome that presumption faces a heavy burden." *United States v. Wadlington*, 233 F.3d 1067, 1073 (8th Cir. 2000). "Where a defendant alleges prosecutorial misconduct, dismissal of the indictment is proper only when the defendant demonstrates flagrant misconduct and substantial prejudice." *United States v. Rupp*, 994 F.3d 946, 949 (8th Cir. 2021). "Dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988). Mistakes or misstatements alone are not enough. *United States v. Levine*, 700 F.2d 1176, 1180 (8th Cir. 1983).

> **A.    Allegations in the Indictment**

Defendants are charged with nine counts in the indictment. Counts one through three are for bank fraud in violation of 18 U.S.C. § 1344 and § 2. Counts four through nine are for money laundering in violation of 18 U.S.C. § 1957 and § 2. The indictment alleges Defendants Christopher Lee Carroll and George Reed sought and obtained funds from the Paycheck Protection Program ("PPP") by misrepresenting how they would use the funds. ECF No. 2. The purpose of the PPP program was to give loans to small businesses to pay salary, wages, and to provide benefits such as health insurance coverage. *Id*. at 2. To obtain a loan, a business submitted an application signed by an authorized representative of the business. *Id*. PPP loans could only be used on certain expenses including payroll, mortgage interest, rent, and utilities for the business. *Id*. at 3. Businesses who received PPP loans could also apply for loan forgiveness. *Id*. at 4. The business had to attest it had not reduced the number of employees or the average

4

paid hours of employees, the loan proceeds had been spent on qualified expenses, and at least 60% of the loan proceeds had been spent on payroll costs. *Id*.

Square One Group, LLC ("Square One") was a timeshare exit company that helped individuals exit from the ownership or lease of timeshare properties. *Id*. at 5. The company's operating agreement described it as a "manager-managed limited liability company" managed by Defendants Carroll and Reed. *Id*. at 5-6. The agreement stated Defendants Carroll and Reed "shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all acts or activities customary or incident to the management of the Company's business." *Id*. at 6. Approximately two-thirds of the employees were sales staff paid by a commission. *Id*. One-third of staff were salaried employees. *Id*. at 7.

In April 2020, Defendants directed Square One's director of finance, MT, to apply for a PPP loan. *Id*. at 8. The application listed 97 employees and asked for a loan in the amount of $1,247,820.30 based on the average monthly compensation of the employees for January and February of 2020. *Id*. The application identified Defendants' wives as the company's managers and listed the director of finance, MT, as the representative of the company. *Id*. Defendants' names did not appear on the application. *Id*. at 9. MT filled out the application, at the direction of Defendants. *Id*. at 8. He responded no to whether any individual owning 20% or more of the equity of the company was subject to criminal charges or on probation or parole. *Id*. at 9. He also responded no to whether any owner had been convicted, pleaded guilty, pleaded nolo contender, been placed on pretrial diversion, or been placed on any form of parole or probation. *Id*.

At the time, Defendants, and MT, knew Defendant Carroll was on parole following a term of imprisonment for a felony conviction. *Id*. After submitting the application, Square One

5

was approved for a loan in the amount of $1,247,800.00. *Id*. at 10. Defendant Carroll told the sales staff they could collect unemployment benefits and told MT to suspend employees' health insurance benefits. *Id*. at 11-12.

During the time period covered by the loan, Defendants made payroll payments equal to the amount of the PPP loan. *Id*. at 12. However, the sole source of compensation for the sales staff was the commissions on sales revenues generated by the employees themselves. *Id*. If a staff member did not generate revenue, Defendants did not compensate that person. *Id*. Defendants did not compensate furloughed employees with backpay for the time they had been unable to earn commissions. *Id*. They also did not supplement the sales staff's reduced commissions with the PPP funds. *Id*. at 11. Nor did they compensate employees for out-of-pocket medical costs they incurred when their health insurance was suspended. *Id*. at 12.

Using the same bank account into which the PPP loan funds were deposited, Defendants spent $1.9 million from May 15, 2020, through June 2020, to purchase trucks, trailers, and land to start three unrelated businesses including a truck repair business, a trucking company that provided freight transport services, and a holding company that owns the assets for the other two businesses. *Id*. at 13. Prior to receiving the loan, Defendants had not acquired any assets for these companies. *Id*. at 15. Without the PPP loan funds, Defendants did not have sufficient funds to start these companies. *Id*.

In November 2020, Defendant Reed, with the knowledge of Defendant Carroll, applied for forgiveness of the full amount of the first PPP loan. *Id*. Defendant Reed indicated on the application Square One had not reduced the number of employees or the average paid hours of their employees between January 1, 2020, and the end of the covered period, despite knowing it had furloughed its sales force and suspended their compensation for more than two months. *Id*.

Enterprise Bank, who issued the original loan, approved Square One's application and absolved any obligation to repay it. *Id*. at 16.

In January 2021, Defendant Reed applied for a second PPP loan. *Id*. He applied for it under his wife's name rather than his own or Defendant Carroll's name. *Id*. Enterprise Bank approved the loan in the amount of $1,663,830.00. *Id*. Both Defendants signed the note for the loan. *Id*. at 17.

On March 5, 2021, four days after the deposit of the second PPP loan, Defendant Carroll cashed a $160,000 "owner draw" check from the company's Enterprise Bank account. *Id*. One week later, both Defendants received a $250,000 "owner draw" from the Enterprise account to their personal bank accounts. *Id*. Without the second PPP loan, Square One Group could not have funded $660,000 in owner draws from the Enterprise bank account. *Id*. At no point after receiving the second PPP loan did Defendants offer to supplement or provide employee compensation using the funds. *Id*. Sales staff continued to be compensated based only on the commissions they generated. *Id*.

    **B.**    **Defendant Carroll's Arguments for Disclosure**

        **i.**    **Financial Records**

Defendant Carroll asserts he needs any testimony and instructions regarding Defendants' bank and/or financial records because the indictment's allegations indicate the financial records were not properly presented to the grand jury. He claims the indictment makes several material factual misstatements as to Defendants' financial records. First, he argues the indictment references two bank accounts with Enterprise Bank when Defendants actually have at least eight bank accounts at Enterprise. Next, he contends the indictment alleges Defendants did not have sufficient funds in Square One's bank accounts to start the three new companies, but the bank

7

statements provided by the Government clearly show they did have sufficient funds. Similarly, he asserts the indictment alleges Square One could not have funded the owner draws without the second PPP loan even though the bank statements from all eight accounts, rather than just the two, show that is not true. Defendant Carroll claims this shows someone provided the grand jury factually incorrect information.

Defendant Carroll fails to show a particularized need for grand jury materials relating to Defendants' financial records. The Government is not required to present evidence of all eight of Defendants' bank accounts. Prosecutors have no legal obligation to present exculpatory evidence to the grand jury unless the grand jury specifically asks for such evidence. *United States v. Williams*, 504 U.S. 36, 52 (1992); *see also United States v. Levine*, 700 F.2d 1176, 1180 (8th Cir. 1983). Defendant Carroll attempts to argue the Government, or "someone" misled the grand jury, but in actuality he challenges the evidence presented to the grand jury, which is not appropriate. An indictment cannot be challenged on the ground there was inadequate or incompetent evidence before the grand jury. *Williams*, 504 U.S. at 54. In fact, the Supreme Court used Defendant Carroll's argument as a reason to hold that prosecutors are not obligated to present exculpatory evidence, stating "a complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading.'" *Id*. Defendant Carroll has not established a particularized need for grand jury materials relating to Defendants' financial records.

### ii. Ownership of Square One Group

In his next argument, Defendant Carroll asserts he needs any grand jury testimony and instructions regarding the ownership of Square One. Defendant Carroll argues the indictment

8

alleges he was an owner of Square One, which is factually incorrect. He claims the company is owned by two irrevocable trusts that own an LLC that owns another LLC that owns Square One.

With this argument, Defendant Carroll again challenges the facts in the indictment and the evidence presented to the grand jury. An indictment can be dismissed only if there is no competent evidence to sustain the charge. *Levine*, 700 F.2d at 1180. At the hearing on this motion, the Government argued there is some evidence Defendant was an owner because Defendant Carroll himself told investigators he is the owner of Square One. This statement was provided to Defendant Carroll in discovery. Thus, the Court cannot say there is *no* competent evidence on this issue. Furthermore, Defendant Carroll's argument that it is legally incorrect to call him "an owner" of Square One is only a legal argument. This argument requires the Court to determine who qualifies as an owner for the purposes of the PPP loan application. Defendant Carroll can file a motion to dismiss the indictment on this basis without access to the grand jury materials.

      iii.    **Fungible Money**

Next, Defendant Carroll argues the indictment ignores that money is fungible. He claims the indictment does not allege Defendants failed to retain workers and maintain payroll, but instead alleges Defendants used other funds for payroll and used PPP funds for other expenses. Defendant Carroll asserts because money is fungible, it does not matter what exact funds they used to make payroll. He argues the indictment's failure to recognize money is fungible shows the grand jury was misled.

With this argument, Defendant Carroll puts forth a legal reason for why the indictment should be dismissed. He does not need materials from the grand jury to make his argument. To the extent he is asserting the Government committed misconduct, "dismissal of the indictment is

9

proper only when the defendant demonstrates flagrant misconduct and substantial prejudice." *Rupp*, 994 F.3d at 949. Defendant Carroll has failed to meet this burden to support a fishing expedition into what was presented to the grand jury. Simply suggesting the grand jury was misled is not enough.

### iv.  Paragraph 69 of the Indictment

Defendant Carroll argues paragraph 69 of the indictment indicates the grand jury was misled. Paragraph 69 states:

> In that forgiveness application, the sole cost Defendant George Reed listed on behalf of Square One Group in support of forgiveness was Square One Group's payroll cost. Defendant George Reed falsely certified on behalf of Square One Group that the "dollar amount for which forgiveness is requested was used to pay costs that are eligible for forgiveness [and] . . . included payroll costs equal to at least 60% of the forgiveness amount[.]"

ECF No. 2, at 15. Defendant Carroll claims the grand jury was misled when it was told Defendants lied on the application about spending the loan funds on payroll because there is no debate that the same amount of money as the loan was spent on payroll.

Defendant Carroll's basis for seeking disclosure of the grand jury materials is again a legal argument that Defendants did not lie when they sought forgiveness of the loan because there is no requirement that specific dollars, rather than the total dollar amount, be spent on PPP qualified expenses. He does not need grand jury materials to make this argument in a motion to dismiss the indictment. Furthermore, to the extent he is asserting the Government committed misconduct by allegedly misleading the jury on this point, "dismissal of the indictment is proper only when the defendant demonstrates flagrant misconduct and substantial prejudice." *Rupp*, 994 F.3d at 949 (8th Cir. 2021). Defendant Carroll has failed to demonstrate misconduct, much less flagrant misconduct.

10

v.      **PPP Program Requirements**

Defendant Carroll argues the indictment is filled with allegations Defendants' actions violated PPP rules and regulations; however, he claims their actions do not actually violate the rules and regulations and do not constitute a crime. Defendant Carroll takes issue with indictment paragraphs 31, 34, 44, 45, 47 and 50. These paragraphs allege the loan application did not identify Defendants as representatives of Square One; at the time they submitted the application, Defendants knew Defendant Carroll, an owner of Square One, was on parole following a term of imprisonment from a felony conviction; Defendants did not tell their employees they received a PPP loan and continued to require sales staff to make sales and generate revenue to receive compensation; Defendants did not supplement the sales staff's reduced commissions when they were unable to make in-person sales; Defendant Carroll suspended employees' health insurance benefits when sales staff were unable to make sales during the pandemic; and Defendants did not use the PPP loan to provide furloughed employees with backpay for the time they were unable to earn commissions, nor did they compensate employees for out-of-pocket medical costs employees incurred while their health insurance was suspended. Defendant Carroll asserts these statements are legally and factually incorrect, and are highly and unfairly prejudicial.

Defendant Carroll's counsel made a similar argument in *United States v. Brij Vaid, et al.*, No. 4:18-CR-279 AGF/NAB, when he argued there were misstatements in the indictment about Medicare regulations, and he needed grand jury testimony to determine if the grand jury was misled on what Medicare regulations require. In denying the defendants' request for grand jury materials, the Honorable Magistrate Judge Nanette Baker found:

> Defendants' brief essentially asserts that the government has misinterpreted the federal regulations and made defendants' conduct appear in violation of the law.

11

> Defendants' briefing explains in detail the reasons why they believe they did not violate these regulations. Based on the foregoing, the undersigned finds that Defendants are not entitled to a fishing expedition into grand jury proceedings when the basis for their motion actually concerns factual findings that need to be made before the ultimate fact-finder. The government is entitled to present its evidence at trial and have its sufficiency examined by the fact-finder, in this case a jury. *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001 (citing *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000)). Defendants can present the indictment and the applicable law to the Court to support their assertion that the alleged conduct is not actually violative of the law.

No. 4:18-CR-279, ECF No. 117, at 6.

The same situation presents itself here. Defendant Carroll asserts the Government has misinterpreted what the PPP loan program requires. He can present the indictment and the applicable law to the Court without the grand jury materials. Defendant Carroll has not demonstrated a particularized need for the grand jury testimony or instructions.

### vi. Misrepresentation of Employee Numbers

Next, Defendant Carroll asserts he needs grand jury testimony relating to paragraph 68 of the indictment which alleges Defendant Reed falsely indicated on the PPP loan forgiveness application Square One had not reduced the number of employees or the average paid hours of their employees from January 2020 until the end of the covered period when in fact Defendants had furloughed employees and suspended their compensation for more than two months. Defendant Carroll argues the indictment misinterprets the language of the provision on the application form applicable to this allegation.

Defendant Carroll again challenges a factual allegation in the indictment. Factual findings need to be made before the ultimate fact-finder, the jury. *Ferro*, 252 F.3d at 968. Additionally, Defendant Carroll's argument the Government misinterpreted the language of the PPP program requirements can be presented in a motion to dismiss the indictment without grand jury materials.

12

### vii. Aiding and Abetting Allegations

In his next argument for access to grand jury materials, Defendant Carroll asserts the indictment suggests the Government erroneously instructed the grand jury as to the elements of aiding and abetting. Defendant Carroll argues the indictment does not allege any affirmative act taken by him related to the application for forgiveness of the first PPP loan. He claims it is imperative to see the instructions given to the grand jury regarding the elements of aiding and abetting because the failure to properly instruct the grand jury could have had a highly improper and prejudicial impact on the grand jury's consideration of Defendant Carroll for Counts 2, 3, and 7-9.

If an element of an offense is missing from an indictment, the indictment may be subject to dismissal. *United States v. Steffan*, 687 F.3d 1104, 1109 (8th Cir. 2012). This argument can be made from the face of the indictment. It does not matter if the grand jury was erroneously instructed because the indictment will be dismissed if it is missing a required element. For this reason, Defendant Carroll has not demonstrated a particularized need for these grand jury materials.

### viii. 12 U.S.C. § 3420

In his final argument, Defendant Carroll asserts the Government appears to have failed to comply with 12 U.S.C. § 3420 by not presenting all of Square One's financial records to the grand jury. This statute states financial records from a financial institution received pursuant to a subpoena issued under the grand jury must be returned and actually presented to the grand jury unless the volume of records makes it impractical. 12 U.S.C. § 3420(a)(1). Then a description of the contents of the records must be provided to the grand jury instead. *Id*.

At oral argument, the Government informed the Court Defendant Carroll has been provided all of the evidence presented to the grand jury, including all of the bank account records. To the extent Defendant Carroll is seeking disclosure of those records, and not testimony or instructions, the undersigned recommends the request be denied as moot because the Government has already provided him a copy of those records. If Defendant Carroll seeks other grand jury materials related to this issue, the undersigned recommends the request be denied.

To obtain grand jury records, Defendant Carroll must show grounds may exist to dismiss the indictment. *See Broyles*, 37 F.3d at 1318. Defendant Carroll has provided no support for his argument that a violation of 12 U.S.C. § 3420 is grounds to dismiss an indictment. Nor does the Court find any. In fact, 12 U.S.C. § 3417 provides for civil penalties for violations of § 3420. It lists damages that may be obtained and disciplinary action an agency can take against an employee who violates the statute. 12 U.S.C. § 3417(a), (b). It also states, "[t]he remedies and sanctions described in this chapter shall be the only authorized judicial remedies and sanctions for violations of this chapter." 12 U.S.C. § 3417(d). Therefore, a violation of 12 U.S.C. § 3420 is not grounds to dismiss an indictment and Defendant Carroll has not established a basis under Rule 6(e)(3)(E)(ii) for disclosure of grand jury materials.

### III.   CONCLUSION

Defendant Carroll has failed to articulate a particularized need for the grand jury materials he seeks. He has not shown grounds may exist to dismiss the indictment because of a matter that occurred before the grand jury. Therefore, the undersigned recommends Defendant Carroll's Motion be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Christopher Lee Carroll's Motion for Disclosure of Certain Testimony and Legal Instructions Provided to the Grand Jury (ECF No. 36) should be **DENIED** as set forth above.

The parties are advised that they have 14 days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). Failure to timely file objections may result in a waiver of the right to appeal questions of fact.

Dated this 4th day of January, 2022.

*/s/ Stephen R. Welby*
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE